SO ORDERED.

SIGNED this 28th day of February, 2019.



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>BARBARA ANN MARSH<br><br>             Debtor. | Case No. 18-10722<br>Chapter 13 |
| IN RE:<br><br>SHATTACK CUSHENBERRY,<br><br>             Plaintiff,<br>vs.<br><br>BARBARA ANN MARSH,<br><br>             Defendant. | Adv. No. 18-5076 |

**MEMORANDUM OPINION**

Chapter 13 debtors may avoid judicial liens against their homesteads to the extent the lien impairs their homestead exemption. "Judicial liens" are defined in the Bankruptcy Code as liens "obtained by judgment" or other legal or equitable processes. Judgment liens securing debtors' domestic support obligations are not avoidable per 11 U.S.C. § 522(f)(1)(A). This case involves the intersection of Kansas domestic relations, exemption, and real property law with the lien avoidance provision found in 11 U.S.C. § 522(f)(1) and whether the underlying judgment should be excepted from discharge under 11 U.S.C. § 523(a)(2), (4), (5) or (15).

In general, matrimonial creditors can except domestic support obligations and non-support divorce debts from a Chapter 13 debtor's discharge under 11 U.S.C. § 523(a)(5) and (a)(15).[1] To be excepted as support under § 523(a)(5), the debt must be owed to a spouse or former spouse, be in the nature of support or alimony, and be established either by a separation agreement or a divorce decree. Non-support debt owed to a spouse or former spouse must also arise from either a property settlement agreement or a divorce decree to be nondischargeable under § 523(a)(15). Non-support debt is only excepted from discharge in a Chapter 13 case if the debtor receives a hardship discharge after failing to complete the plan.[2]

Barbara Marsh and her ex-husband Shattack Cushenberry lived together from 2002 until 2015. They were divorced in 2003, but continued to live together after their divorce without formally remarrying. From 2010 on, they lived in a home

---

[1] *See* 11 U.S.C. § 1328(a)(2).
[2] *See* 11 U.S.C. § 1328(b) and (c)(1).

2

that Marsh owned in joint tenancy with her sister. When Cushenberry sued Marsh for divorce (again) in 2015, the state court determined that they were not married at common law, but awarded Cushenberry a judgment of $100,000 against Marsh corresponding to his equity in the home. The state court also granted Cushenberry a lien on the home they lived in—the home jointly owned by the sisters, to secure payment of the judgment. When Marsh filed this bankruptcy case, she sought to avoid this lien and Cushenberry objected to her homestead exemption. Cushenberry also seeks to except his judgment from Marsh's discharge as support or property settlement or as a debt incurred by fraud. Cushenberry's interest is a judicial lien that impairs Marsh's homestead exemption and is avoidable. His debt, based on the state court judgment, is neither domestic support nor a property settlement debt owed to a "spouse" or "former spouse" under the Bankruptcy Code and is dischargeable. Cushenberry did not demonstrate that the debt was incurred by Marsh's fraud and is dischargeable. The lien should be avoided, and the debt dischargeable.[3]

Findings of Fact

A. Hyacinth Chain of Title

Francis E. Marsh had three daughters: Sharon Bright, Connie Cundiff, and Barbara Marsh, the debtor. He owned a home on Hyacinth Street in Wichita and

---

[3] All statutory references are to the Bankruptcy Code, Title 11, U.S.C. unless otherwise indicated. Trial was held on these matters on January 15, 2019. Debtor Barbara Marsh appeared in person and by her attorney David J. Lund. Judgment creditor Shattock Cushenberry appeared in person and by his attorney James T. McIntyre. Karin Amyx also appeared for the Chapter 13 trustee Carl B. Davis.

3

conveyed it to his revocable living trust. To raise funds for his care, Connie and Barbara purchased the house from the trust on May 15, 2009. On that day, they recorded a deed from the Marsh Trust to them as joint tenants with the right of survivorship.[4] Sharon lived in the house when Connie and Barbara purchased it, but moved with her family to Florida in late 2009. Either Connie or Connie and Barbara borrowed from Fidelity Bank to finance the purchase and granted a mortgage on this Hyacinth house to secure its repayment. Barbara testified that she and Connie initially contemplated renting the house out, but Marsh moved into the house in mid-2010. Connie paid off the mortgage and, on November 13, 2009, she filed a quitclaim deed from Connie and Barbara to herself.[5] Marsh and her children from a previous marriage lived on Hyacinth with her ex-husband Cushenberry and his children by another marriage. Cushenberry, a contractor, worked on the upstairs while the others lived in the basement. On March 9, 2010, Cundiff re-conveyed the house to herself and Marsh as joint tenants.[6] The two sisters remained joint tenants of the Hyacinth property until they conveyed the property to Marsh by warranty deed filed on June 12, 2018, several weeks after Marsh filed this case.[7]

    B.  The Marsh-Cushenberry Domestic Court Order

---

[4] Trial Ex. E. In referring to the dates of the series of deeds, I refer to their recording dates unless otherwise specified.
[5] Trial Ex. B.
[6] Trial Ex. C.
[7] Trial Ex. D.

Marsh met Cushenberry in 2001. They were married in 2002, but divorced by 2003. They nevertheless continued to live together for all but two months until 2015 when Cushenberry sued Marsh for divorce in state court, claiming a common law marriage.[8] The divorce case was tried in 2017 and, in a reasoned written decision entered on June 6, 2017, the state court reached the following conclusions.[9] Marsh and Cushenberry were not married at common law or otherwise. While they lived together, Cushenberry contributed labor, materials, and money to acquiring the house and renovating it. There is no suggestion in either that order, or in the record before me, that the parties acquired and improved the Hyacinth house as a business proposition; rather, both parties lived in the home with their children from previous marriages. Cushenberry also contributed to household expenses. The state court found that he contributed between $150,000 and $175,000 between 2010 and 2015, and that those contributions were founded, at least in part, on his belief that the home was both his and Marsh's. The state court recognized his contributions by granting him a "$100,000 judgment … corresponding to equity in the Hyacinth house and … a lien against that property for same."[10] It did not grant Cushenberry an interest *in* the Hyacinth house. When Cushenberry attempted to execute on that judgment, Marsh filed this chapter 13 bankruptcy case.

C. Marsh's Bankruptcy

---

[8] *Cushenberry v. Cushenberry,* Case No. 2015 DM 7589 (Eighteenth Judicial District, Sedgwick County, Kansas)
[9] Trial Ex. A
[10] Trial Ex. A, p. 8.

5

Marsh filed this Chapter 13 case, her third bankruptcy since 2000, on April 24, 2018. She claimed her interest in the Hyacinth house as her homestead and filed a chapter 13 plan that proposed to avoid Cushenberry's judgment lien under § 522(f)(1).[11] She filed a separate motion to accomplish that.[12] In 2010, Marsh filed her previous Chapter 7 case as "Barbara Ann Cushenbery," shortly after Connie deeded the house back to herself and Barbara as joint tenants. Marsh filed schedules in that case reflecting ownership of another house subject to a mortgage along with her interest in the unencumbered Hyacinth property which she claimed exempt.[13]

Analysis

Three matters are before the Court: Marsh's motion to avoid the judgment lien, plan confirmation, and the adversary proceeding to except the Cushenberry debt from Marsh's discharge. At trial, Cushenberry's counsel conceded that Marsh resided in the Hyacinth house at the petition date. That concession resolves Cushenberry's exemption objection which is OVERRULED.[14] Hyacinth is Marsh's homestead. This focuses us on the continuing validity of the judgment lien, plan confirmation, and dischargeability of the $100,000 judgment.

***Avoidance of Cushenberry's Judgment Lien***

---

[11] Doc. 3 - Chapter 13 Plan.
[12] Doc. 27 – Motion to Avoid Lien.
[13] *See In re Barbara Cushenbery,* Case No. 10-10762, Doc. 1.pp. 15, 19-20.
[14] Doc. 24.

6

To the extent a judgment lien ever attaches to a Kansas homestead, this one attached to Marsh's interest in Hyacinth on the day it was entered, June 6, 2017.[15] While no creditor can execute on a judgment lien against a debtor's homestead, upon a voluntary disposition of the homestead, the lien will impair Marsh's homestead exemption.[16] Were she to sell it, Cushenberry could attempt to claim her share of the proceeds.[17] This requires us to apply the formula set out in § 522(f)(2) to determine the extent of the impairment. Before doing that, we consider Cushenberry's argument that the state court order granted him an outright share of the equitable ownership in the property.

The state court's order plainly grants Cushenberry a money judgment and a lien to secure its payment. There is certainly state law authority to divide property accumulated by unmarried cohabitants, even when the parties are not legally

---

[15] *See* KAN. STAT. ANN. § 60-2202(a) (2005). *See First Nat. Bank v. Tyler,* 130 Kan. 308, 286 P. 400 (1930) (holding that a judgment doesn't attach to or become a lien upon a homestead); *Morris v. Ward,* 5 Kan. 239 (1869) (adopting view that no lien can ever attach to or affect the homestead, except those specifically mentioned in the constitution – liens for taxes, purchase money mortgage, or consensual liens); *Deutsche Bank Nat. Trust Co., v. Rooney,* 39 Kan. App. 2d 913, 915-16, 186 P.3d 820 (2008) (citing longstanding case law that judgment liens do not attach to homestead property).

[16] *See* KAN. STAT. ANN. § 60-2401(a) and (d) (2005) (execution may be levied against nonexempt property). *See also,* KAN. CONST. art. 15, § 9; *Jones v. St. Francis Hospital & School of Nursing, Inc.,* 225 Kan. 649, 653, 594 P.2d 162 (1979) (finding homestead property exempt from forced sale where judgment debtor's widow occupied the property after debtor's death).

[17] *See In re Cisneros,* 257 B.R. 332 (Bankr. D. N.M. 2000) (concluding that even though a judgment lien doesn't attach to a homestead under New Mexico law, the judgment lien "impaired" debtors' homestead exemption by constituting a cloud on title and affecting debtors' ability to sell the property).

7

married.[18] Nothing about the court order intimates that the judge intended to grant Cushenberry legal or equitable ownership in the Hyacinth property—rather the order plainly grants a money judgment "corresponding to" Cushenberry's equity. That is a "charge against or an interest in property to secure payment of a debt," the definition of a "lien."[19] A "judicial lien" is one granted in this manner.[20]

Section 522(f)(1)(A) provides that a judicial lien other than one securing a domestic support obligation (DSO), may be avoided if it impairs an exemption. The state court judgment is not a DSO because a DSO is defined by the Code as a debt in the nature of alimony or support that the debtor owes a spouse or former spouse, that has been established by a divorce decree or "order of a court," and that isn't assigned to a nongovernmental entity for the purpose of collecting the debt.[21] Two of the elements of a DSO are lacking here. Nothing about the judgment suggests it's support or alimony. Rather, the state court plainly intended to compensate Cushenberry for his contributions to repairing, maintaining, and paying for the Hyacinth house. Moreover, the state court expressly determined that Cushenberry and Marsh were not married at the time of the 2015 divorce case and therefore he

---

[18] *See Eaton v. Johnston,* 235 Kan. 323, 328-29, 681 P.2d 606 (1984) (Upon finding that no common law marriage exists, trial court could exercise its inherent equitable power, independently of the statute, to equitably divide the property accumulated by the parties while living together.); *Frazier v. Goudschaal,* 296 Kan. 730, 744, 295 P.3d 542 (2013) (District court had authority to make equitable division of property accumulated by biological mother and her same-sex partner while living together). *See also* KAN. STAT. ANN. § 23-2706 (2017 Supp.).
[19] Section 101(37) (defining a "lien").
[20] Section 101(36) defines a judicial lien as a "lien obtained by judgment . . . or other legal or equitable process or proceeding."
[21] *See* § 101(14A) (defining a DSO).

8

cannot be her "spouse" or "former spouse" for the purpose of that proceeding. Accordingly, Cushenberry's lien is avoidable under § 522(f)(1)(A) to the extent allowed under (f)(2).

Section 522(f)(2) sets out the manner of determining the extent of the impairment. When the state court entered its judgment, Marsh and her sister, Cundiff, owned the Hyacinth house as joint tenants with the right of survivorship. In Kansas, joint tenants are presumed to have an equal proportion of ownership.[22] When a joint tenant dies, the decedent's rights terminate, and the surviving tenant alone owns the property in fee simple. Thus, the judgment encumbered Marsh's interest in the house. And when Cundiff and Marsh deeded the house to Marsh alone in June of 2018, they severed the joint tenancy; Cundiff no longer had an ownership interest or a survivor's right. Marsh owned all the fee, subject to Cushenberry's lien.

The lien impairs the exemption "to the extent that such lien impairs an exemption to which the debtor would have been entitled."[23] Measuring the extent of the impairment requires us to determine—

> …the extent that the sum of (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor *could*

---

[22] *In re Estate of Lasater,* 30 Kan. App. 2d 1021, 54 P.3d 511 (2002) (discussing the four unities of a joint tenancy: an interest must be acquired by all cotenants, by the same conveyance, commencing at the same time, and held for the same term of undivided possession. Although there is a presumption of equal ownership in joint tenancies, there is no requirement of unity of equality of ownership interests, they must only be of the same duration.); *Sheils v. Wright,* 51 Kan. App. 2d 814, 357 P.3d 294 (2015) (In a joint tenancy, the remaining joint tenant becomes owner of the full property interest upon the other's death.).
[23] Section 522(f)(1).

9

claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.[24]

The value of the lien is $100,000, the amount of the judgment. There are no other liens on the property. The values of the exemption and the interest in the property without any liens require more elaboration.

When she filed this case on April 24, 2018, Marsh claimed to own a one-half interest in Hyacinth. Because she valued Hyacinth at $218,000, her interest was worth $109,000.[25] After she filed, but before she received Cundiff's deed, Marsh amended her Schedule C to claim her interest exempt in the amount of $109,000.[26] Days later, Marsh and Cundiff deeded all of the interest to Marsh.[27] Section 1306 provides that whatever Marsh acquired under that deed became property of the estate.[28] And § 522(b)(3) provides that Marsh could exempt from property of the estate whatever state law permitted. Marsh's homestead exemption protects up to one acre of land in an incorporated city with unlimited value as KAN. STAT. ANN. § 60-2301 provides. Accordingly, what Marsh "could" exempt is the entire property having a value that is equal to the value of the exempted homestead.[29]

Applying the formula in § 522(f)(2)(A), we calculate the extent of the impairment as follows:

---

[24] 11 U.S.C. § 522(f)(2)(A) (Emphasis added.).
[25] Doc. 1, p. 9 -- Schedule A/B.
[26] Doc. 19, filed May 17, 2018.
[27] Trial Ex. D – Warranty Deed recorded June 12, 2018.
[28] 11 U.S.C. § 1306(a)(1) (property of the Chapter 13 estate includes property acquired after the date of the petition).
[29] KAN. STAT. ANN. § 60-2301 (2017 Supp.).

10

| | |
|---|---|
| Value of judgment lien | $100,000 |
| All other liens | $0 |
| <u>Amount of the exemption</u> | <u>$218,000</u> |
| Total § 522(f)(2)(A)(i)-(iii) | $318,000 |
| <u>Less debtor's property interest</u> | <u><$218,000></u> |
| Extent of Impairment | $100,000 |

Because the extent of the impairment is equal to the amount of the lien, the lien is avoidable in toto.[30]

### *Confirmation of Marsh's Plan*

After the Chapter 13 trustee stated that a slight adjustment to the debtor's plan payment would be necessary to confirm the plan, debtor's counsel indicated Marsh was prepared to increase her payment. Because Cushenberry's lien can be avoided, there is no need to treat his claim as a secured claim in the plan. Cushenberry's objection to confirmation may be overruled and the plan should be confirmed.[31]

---

[30] We distinguish this case from *In re Taylor*, 899 F.3d 1126 (10th Cir. 2018). In that recent Tenth Circuit case, the court determined that where a debtor and a non-debtor each owned a half interest, only the value attributable to the debtor's half interest "could" be exempted. Taylor was a chapter 7 case; in our case, the value of the debtor's homestead increased when Cundiff deeded her the other half of Hyacinth post-petition which she "could" exempt under § 522(b). Taylor is also less relevant in Kansas where the homestead exemption has no value limit if § 522(o) or (p) do not apply.

[31] *See* Doc. 3 (Chapter 13 plan) and Doc. 25 (Cushenberry's objection to confirmation).

11

### *Dischargeability of Marsh's Judgment Debt*[32]

Cushenberry relies on four subsections of § 523(a) to support his claim that the $100,000 judgment ("the Debt") should be excepted from Marsh's discharge. None avails him of relief. The first two theories are that the Debt is a domestic support obligation (DSO) that is excepted from discharge under § 523(a)(5), or, if the Debt isn't a DSO, that it amounts to a non-support debt in the course of a divorce that is excepted from discharge under § 523(a)(15).[33] In the alternative, he contends that Marsh incurred this Debt by fraudulent conduct, either as a general partner and fiduciary of Cushenberry under § 523(a)(4), or simply by actual fraud under § 523(a)(2)(A). In analyzing these claims, the Court is mindful of the well-established rule that exceptions to discharge are narrowly construed and any doubt is resolved in the debtor's favor.[34]

1. <u>The Debt is not a DSO</u>.

Domestic support orders are defined in §101(14A) as "debts to a spouse, former spouse…in the nature of alimony, maintenance, or support" that are established in a separation agreement, divorce decree, property settlement agreement, or by a court order. It is true that Marsh is Cushenberry's former

---

[32] Cushenberry presented no additional evidence at trial on the nondischargeability claims, and stood on the evidence presented during the lien avoidance portion of the trial.
[33] Section § 523(a)(15) debts are *not* excepted from a Chapter 13 debtor's full payment discharge, *see* 11 U.S.C. § 1328(a)(2). Only if Marsh fails to complete her plan and obtains a hardship discharge would this exception come into play. *See* § 1328(b) and (c)(1).
[34] *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir. 1997).

12

spouse, but not as a result of the 2015 divorce proceeding wherein the judgment debt was incurred. The state court declined to grant a divorce because it found that the parties were not married, whether at common law or formally. Further, the equitable division of the home's equity doesn't create a debt "in the nature of alimony, maintenance, or support." Nothing in the state court order points to any consideration of the differing income levels or financial needs of the parties. Further, the Debt was not established in a "divorce decree"—there having been no marriage, there was no "divorce." The Debt is not excepted from Marsh's discharge under § 523(a)(5).

2. The Debt is not of a kind described in § 523(a)(15).

Non-DSO divorce debt to a former spouse is excepted from discharge by § 523(a)(15).[35] The debt must be to a spouse or former spouse that is not in the nature of support covered by § 523(a)(5) and was incurred in the course of a divorce or in connection with a separation agreement or divorce decree.[36] As with the § 523(a)(5) discharge exception, Cushenberry isn't Marsh's former spouse as a result of the 2015 proceeding and because the Debt wasn't incurred in the course of a divorce it is not excepted from discharge under this subsection.

3. The Debt was not incurred by fiduciary fraud.

---

[35] *See In re Taylor,* 737 F.3d 670, 675 (10th Cir. 2013) (Section 523(a)(15) applies to a divorce debt only if that debt doesn't qualify as DSO under § 523(a)(5).).

[36] *Id.* at 676-80 (Judgment debt incurred by debtor as a result of ex-husband's overpayment of spousal support was not a DSO, but was a debt incurred by debtor in the course of and in connection with a divorce and excepted from discharge under § 523(a)(15)).

13

Section 523(a)(4) excepts from discharge debts incurred as a result of fraud or defalcation by a fiduciary. Cushenberry asserts that even if he and Marsh weren't legally married, they were general partners who owed one another a fiduciary duty. While Kansas law recognizes that partners occupy a fiduciary relationship, agreements establishing fiduciary relationships, if not in writing, must be clear and convincing.[37] Cushenberry had the burden to prove this loosely pleaded claim, but provided virtually no evidentiary support. First, no evidence either here or in state court points to Cushenberry and Marsh being general partners. The Kansas Supreme Court defines a partnership as a contract of two or more persons to place some or all of their capital and skill in commerce or business, and to divide the profits and bear the losses of the venture in agreed proportions.[38] The Kansas Revised Uniform Partnership Act provides that the "association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership."[39] Nothing in the record points to Cushenberry and Marsh undertaking a "business for profit."

Moreover, the nature of the fiduciary relationship that must exist for purposes of § 523(a)(4) is more stringent than state law.[40] A fiduciary relationship

---

[37] *See Wolf v. Brungardt,* 215 Kan. 272, 284-85, 524 P.2d 726 (1974).
[38] *See Potts v. Lux,* 161 Kan. 217, 221, 166 P.2d 694 (1946) (referencing definitions in 40 Am.Jur. 126, 127 § 2).
[39] KAN. STAT. ANN. § 56a-202(a) (2005). *See also* § 56a-101(f) (defining a partnership).
[40] *See Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996) (The existence of a fiduciary relationship under § 523(a)(4) is determined under federal law.).

marked by general duties of confidence, trust, loyalty, and good faith is insufficient.[41] Excepting a debt from discharge for misconduct by a fiduciary requires that the fiduciary relationship arises from an express or technical trust.[42] That means that money or property on which the debt is based was entrusted to the debtor and debtor then abused that trust.[43] No evidence demonstrating the existence of such an express or technical trust has been offered by Cushenberry here. That alone is fatal to his § 523(a)(4) claim.[44]

4. <u>The Debt was not incurred by actual fraud</u>.

Finally, Cushenberry argues that Marsh's conduct amounts to actual fraud that would except the Debt from her discharge under § 523(a)(2)(A). To prevail under this subsection, a creditor must show that he justifiably relied to his detriment on the debtor's false statements or that the debtor engaged in fraudulent conduct with the intention of harming him.[45] He relies on the same set of facts

---

[41] *In re Young,* 91 F.3d at 1372. *See also Duggins et al. v. Bratt (In re Bratt),* 489 B.R. 414, 425 (Bankr. D. Kan. 2013) (strict fiduciary duties owed by corporate directors and officers to corporation and its shareholders is insuffient to support § 523(a)(4) claim).

[42] *Young, supra* at 1371-72.

[43] *Id. See also Bratt, supra* at 426.

[44] An alleged partnership or general fiduciary duties owed between partners, without an express agreement or a state law creating a trust relationship, is insufficient to establish the fiduciary relationship required by § 523(a)(4). *See Smolen v. Hatley (In re Hatley),* 227 B.R. 757, 760 (10th Cir. BAP 1998), *aff'd* 194 F.3d 1320 (Table) (10th Cir. 1999); *Holaday v. Seay (In re Seay),* 215 B.R. 780, 786-87 (10th Cir. BAP 1997); *Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke),* 212 B.R. 375, 380-81 (Bankr. D. Kan. 1997).

[45] *See Young,* 91 F.3d at 1373 (stating elements of a claim for false representation under § 523(a)(2)(A)); *Diamond v. Vickery (In re Vickery),* 488 B.R. 680, 691 (10th Cir. BAP 2013) (recognizing "actual fraud," requiring an intent to deceive, as a separate basis for the fraud discharge exception); *Bank of Cordell v. Sturgeon (In re Sturgeon),*

15

presented at trial in defense of the lien avoidance motion and principally argues that Marsh defrauded him by her string of Hyacinth conveyance transactions with her sister but doesn't say exactly how.[46] The conveyance of the home does not appear to have been done with any intent to defraud Cushenberry—at least no such fraudulent intent was demonstrated at trial or can be inferred from the evidence presented. He had no lien in the property until 2017, at which time Marsh and Cundiff were joint tenants. His lien would only have attached to Marsh's half interest. After the June 2018 deed, Marsh's interest increased and his lien would have attached to all of it. He had no basis, at least under the state court's order, for a claim against Cundiff. If anything, the June 2018 deed bettered his lien position. While he couldn't execute on Marsh's homestead, his judgment impaired her interest. Without demonstrating either a false statement or fraudulent conduct, an intent to deceive, or detrimental reliance, Cushenberry cannot sustain his misrepresentation or actual fraud claim. The Debt is not excepted from Marsh's discharge under § 523(a)(2)(A).

    5.    <u>No exception to discharge of the Debt has been proven</u>.

---

496 B.R. 215, 223 (10th Cir. BAP 2013) (describing "actual fraud" as intentionally engaging in a scheme to deprive or cheat another of property). The Court also notes that nothing in the state court's decision granting the $100,000 judgment against Marsh suggests that Marsh engaged in actual fraud or made false representations, and it is devoid of any such findings. *See* Trial Ex. A.

[46] Cushenberry appears to rely on testimony that no consideration exchanged hands for the Marsh-Cundiff conveyances represented by Trial Exhs. B, C, and D, despite the deeds' recitation of consideration. Still, he doesn't explain how this is a fraud against him.

16

In short, Marsh should be granted judgment on each count of Cushenberry's complaint to determine nondischargeability of the Debt. There is nothing in the trial record that would support these claims—their demonstration requires more than a bare statement that "the debtor has engaged in a pattern of deceit." Judgment should be entered for Marsh on the nondischargeability complaint.

Conclusion

Marsh's plan is confirmed as modified at the trial. The Chapter 13 trustee shall prepare an appropriate confirmation order. Cushenberry's objection to Marsh's homestead exemption is overruled as is his objection to her motion to avoid his judgment lien. The lien is avoided. Counsel for Marsh shall prepare separate orders on the exemption and lien avoidance rulings. Judgment should be entered for Marsh against Cushenberry denying his nondischargeability complaint in toto. The Court will issue a judgment on the adversary complaint this day.

# # #